# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1773

_____

|  |  |  |
|---|---|---|
| Sherneth Marcia Raffington, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order of |
| | * | the Board of Immigration Appeals |
| Immigration and Naturalization | * | |
| Service, et al., | * | |
| | * | |
| Respondents. | * | |

_____

Submitted:  March 14, 2003

Filed:  August 26, 2003

_____

Before HANSEN,* Chief Judge, JOHN R. GIBSON and LOKEN, Circuit Judges.

_____

LOKEN, Chief Judge.

In September 2001, the Board of Immigration Appeals (BIA) denied Sherneth Raffington's application for suspension of deportation, concluding that she lacked the required seven years of continuous physical presence in the United States. Raffington did not appeal that decision.  Instead, she moved to reopen the deportation

_____

*The Honorable David R. Hansen stepped down as Chief Judge at the close of business on March 31, 2003.  The Honorable James B. Loken became Chief Judge on April 1, 2003.

proceedings to permit her to apply for asylum based on new evidence that she is a member of a social group that is persecuted in Jamaica. The BIA summarily denied the motion on the ground that Raffington failed to present a prima facie case that she will be persecuted upon her return to Jamaica. Raffington petitions for review of that order. Concluding the BIA did not abuse its discretion in denying the motion to reopen, we deny the petition for review.

Raffington is a 43-year old Jamaican citizen. She left Jamaica in 1984 to join family members in Canada. After failing to procure a Canadian visa, Raffington entered the United States illegally in April 1988. These deportation proceedings (now called removal proceedings) were commenced with an October 1994 order to show cause. Raffington conceded deportability and applied for suspension of deportation in November 1995. The application was still pending on April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Applying the transition rule in § 309(c)(5) of that Act,[1] the BIA concluded that Raffington was not eligible for suspension of deportation because her continuous presence from April 1988 to October 1994 was less than the required seven years. Raffington did not appeal, and that decision is not before us.

Raffington then filed this motion to reopen proceedings so that she could apply for asylum. In support of the motion, she presented medical evidence that she has a history of depression and attempted suicide, that her mental illness is being effectively treated in the United States, and that deportation would increase her potential for suicide and deprive her of necessary, ongoing counseling and psychiatric care. Raffington argued that she is eligible for asylum as a member of a persecuted social group, "mentally ill patients." In support of that contention, she submitted the

---

[1]Pub. L. No. 104-208, 110 Stat. 3009-627 (1996), as amended by the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2193 (1997).

Department of State's 2000 Country Report on Jamaica, which described an incident in which homeless persons living on the streets of the Montego Bay business district, some reportedly suffering from mental illness, were rounded up and forcibly transported away, and a report from the Pan American Health Organization noting a limited range of mental health services available in Jamaica and a shortage of trained personnel. The BIA denied the motion to reopen because Raffington failed to present a prima facie case that she will persecuted upon her return to Jamaica on account of membership in a social group.

On appeal, Raffington first argues that the BIA abused its discretion in denying her motion to reopen because she presented a prima facie case of eligibility for asylum. An applicant for asylum must establish that she is a "refugee," which the relevant statute defines to include a person who "is unable or unwilling to return to" her country of origin "because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A); see INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987). Raffington's written statement to the BIA expressed a fear of persecution if she returns to Jamaica because she is a single mentally ill female.

Motions to reopen deportation proceedings, like petitions for rehearing and motions for new trial, are disfavored because of the strong public interest in bringing litigation to a close, and because "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." INS v. Abudu, 485 U.S. 94, 108 (1988) (quotation omitted). In Abudu, the Supreme Court noted at least three independent grounds on which the BIA may deny a motion to reopen -- failure to establish a prima facie case for asylum; failure to introduce previously unavailable, material evidence or failure to reasonably explain why asylum was not initially sought; or a determination that the movant would not be entitled to this discretionary relief. Each ground is reviewed under the abuse of discretion

standard.  Id. at 104-05; see 8 C.F.R. § 3.2(c).  Here, the BIA denied the motion to reopen on the ground that Raffington failed to present a prima facie case for asylum.

When a timely application for asylum has been denied, we will affirm the BIA's decision if it is supported by substantial evidence on the agency record considered as a whole.  "To overturn a finding that an alien is not eligible for asylum, the alien must meet the heavy burden of demonstrating that the evidence was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution."  Nyonzele v. INS, 83 F.3d 975, 981 (8th Cir. 1996) (quotation omitted). When asylum is first sought in a motion to reopen, the Supreme Court's unanimous decision in Abudu dictates that our review of whether the BIA abused its discretion in finding no prima facie case be even more deferential.

In this case, the BIA noted that Raffington "failed to submit any evidence which would support her assertion that she has a well-founded fear of persecution upon her return to Jamaica based upon her mental disability."  Therefore, the BIA concluded, "there is no evidence in the record that she will be singled out for persecution based upon one of the grounds enumerated in the Act."  The record overwhelmingly supports these conclusions.  First, Raffington failed to show that mentally ill Jamaicans, or mentally ill female Jamaicans, qualify as a "particular social group" for asylum purposes.  They are not "a collection of people closely affiliated with each other, who are actuated by some common impulse or interest." Safaie v. INS, 25 F.3d 636, 640 (8th Cir. 1994) (concluding that the category Iranian women is overbroad); see Najafi v. INS, 104 F.3d 943, 947 (7th Cir. 1997) (concluding that Iranians who left before the revolution are not sufficiently bound). Like the asserted grouping of children in Lukwago v. Ashcroft, 329 F.3d 157, 171-72 (3rd Cir. 2003), the mentally ill are too large and diverse a group to qualify.

Second, Raffington failed to present a prima facie case that the mentally ill or mentally ill females are being or have been persecuted in Jamaica on account of this

-4-

shared characteristic. Her unsupported assertion that she would be stigmatized and discriminated against because of her mental illness was not reliable evidence that would establish a well-founded fear of persecution at an asylum hearing. See Melecio-Saquil v. Ashcroft, 337 F.3d 983 (8th Cir. 2003). Her medical provider's concern and the Pan American Health Organization's report that Jamaica devotes limited resources to treating those who are mentally ill do not establish a pattern of persecution on account of this disability. See Nyonzele, 83 F.3d at 983; Fisher v. INS, 291 F.3d 491, 497 (8th Cir. 2002). And the State Department's Country Report did not present a prima facie case that the Jamaican government practices or condones widespread persecution of the mentally ill. The Report described an incident in which a group of homeless persons that may have included the mentally ill was rounded up in Montego Bay. It is unclear who did the rounding up and whether any individuals were targeted because of their mental illness. But in any event, the Report relates that the incident triggered an official inquiry, compensation for the victims, and public criticism of those responsible. Thus, this one incident hardly shows a pattern of mistreatment of the mentally ill.

For the foregoing reasons, we conclude that the BIA did not abuse its discretion in denying Raffington's motion to reopen.

Raffington next argues that the BIA's delay in deciding her application for suspension of deportation unfairly subjected her to the April 1997 statutory change in the manner in which the seven-year-continuous-presence requirement must be calculated. Therefore, the government is estopped to deport her, and the BIA should have terminated her deportation proceedings. Raffington did not raise this issue to the BIA prior to its September 2001 deportation order. She did not appeal that order, nor did she raise this issue in her motion to reopen. When the time to seek review of a deportation order has expired, a subsequent motion to reopen or reconsider, even if timely, does not affect the finality of the deportation order. Stone v. INS, 514 U.S. 386, 405-06 (1995). Therefore, a court reviewing the denial of a motion to reopen

has no jurisdiction to review the underlying deportation order.  <u>See</u> <u>Bae v. INS</u>, 706 F.2d 866, 869 (8th Cir. 1983).  Accordingly, we lack jurisdiction to address this issue.

The petition for review is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.