# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1666

_____

| | | |
|---|---|---|
| Sacdiyo M. Awale, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| John Ashcroft, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: May 13, 2004
Filed: September 13, 2004

_____

Before LOKEN, Chief Judge, SMITH, Circuit Judge, and DORR,* District Judge.

_____

LOKEN, Chief Judge.

Sacdiyo Awale is a thirty-four year old native of Somalia who entered the United States in January 1996 and applied for asylum and withholding of removal. The immigration judge (IJ) denied the application after an evidentiary hearing. The Board of Immigration Appeals (BIA) dismissed Awale's administrative appeal. The BIA assumed that Awale established past persecution but concluded that the government rebutted the resulting presumption of a well-founded fear of future persecution if she must return to Somalia. Awale petitions for judicial review. We

_____

*The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri, sitting by designation.

conclude that substantial evidence does not support the BIA's conclusion and therefore remand to the BIA for further proceedings.

The President of Somalia, Siad Barre, fled the capital city of Mogadishu in January 1991, triggering a long period of violence and anarchy as clan-based militias fought for control of Mogadishu and other regions of the country. Awale testified that in February 1991 members of her family were attacked in their Mogadishu home by soldiers of the United Somali Congress (USC), a militia controlled by the Hawiye clan. Though Mogadishu residents include members of many clans, the Hawiye are the dominant clan in the Mogadishu region. The USC marauders ransacked the home, raped Awale and her female cousin, beat her mother, and shot and killed her father, a prominent physician, and her brother. Awale testified that the USC militia knew that her family belonged to the Galgale, a minority clan not affiliated with one of the four or five dominant Somali clans. The attackers accused the Awale family of supporting Siad Barre. USC militia also attacked other homes in Awale's multi-clan neighborhood but did not attack the homes of Hawiye clan members. That same day, USC militia raped Awale's sisters and beat her brother elsewhere in the city. These siblings were interrogated at length as to the whereabouts of their father and other family members. Other Somali witnesses confirmed the attack and that Awale's father was a member of the minority Galgale clan.

Awale and her mother and cousin stayed with a neighbor for a month until the neighbor's house was shelled. On March 19, Awale, her mother, and her surviving siblings left Mogadishu for Baidoa, Somalia. The family stayed in Baidoa without incident for over four years, living with one of the father's former patients and pretending to be members of a Hawiye sub-clan, the Abgal. After a UN peacekeeping force left Baidoa in March 1995, USC troops from Mogadishu attacked the city and overran its defenders. Awale testified that she left in November 1995 because she feared that the USC would discover her true clan affiliation. Awale traveled to Kenya with other relatives, stayed there one month, and then traveled to the United States

in January 1996 on a false passport purchased by her uncle. Since fleeing to Kenya, Awale has had no contact with her mother and surviving siblings, who were still in Somalia when she left. Her asylum application states that she has no way to defend herself if forced to return to Somalia.

The Attorney General has discretion to grant asylum to a "refugee," an alien who is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1). Awale seeks asylum on the ground that she suffered past persecution in Somalia and has a well-founded fear of persecution if she returns to Somalia because of her membership in the Galgale clan. Because clans are the key social group for virtually all Somalis, "the BIA has acknowledged that a Somali clan or sub-clan may be 'a particular social group' for purposes of determining whether persecution or fear of persecution is 'on account of' that protected ground." Hagi-Salad v. Ashcroft, 359 F.3d 1044, 1046 (8th Cir. 2004).

A finding of past persecution entitles the asylum applicant to a presumption that she has a well-founded fear of future persecution if she returns to that country. 8 C.F.R. § 208.13(b)(1).[1] However, the government can rebut this presumption by proving that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution," or that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A) & (B). "In a close case, the question

[1]Even if the presumption is rebutted, the applicant is eligible for discretionary asylum if the past persecution was particularly severe. See 8 C.F.R. § 208.13(b)(1)(iii)(A). On appeal, Awale argues that she is entitled to asylum on this ground. As neither the IJ nor the BIA considered this issue, we may not properly address it in the first instance. The BIA may of course take it up on remand and presumably will do so if it upholds Awale's claim of past persecution.

of past persecution . . . may well be critical, because it determines whether the INS or the asylum applicant has the burden of proof" on these two issues. Hagi-Salad, 359 F.3d at 1049; see 8 C.F.R. § 208.13(b)(3)(i) & (ii).

The IJ found Awale's testimony credible. Without question, the violence inflicted on Awale and her family in February 1991 qualifies as past persecution if the USC militia raped and killed family members on account of their membership in the Galgale clan or their support of the Siad Barre regime. See Hagi-Salad, 359 F.3d at 1045. The IJ rejected the claim of past persecution because "I find insufficient evidence in the record to conclude that the harm that befell [Awale's] family was on account of membership in a particular social group [the Galgale clan], or an imputed political opinion [support of the Siad Barre government]." The BIA affirmed on a different ground, without resolving the issue of past persecution:

> We do not necessarily agree with the [IJ's] determination that [Awale] failed to establish past persecution. However, even assuming the harm which [Awale] suffered was on account of a protected ground, we find that the country report reflecting decreased inter-clan conflict and [Awale's] demonstrated ability to live in Somalia without further incident for more than 4 years are sufficient to overcome the presumption of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i) (2002).

We review the BIA's decision "solely upon the administrative record upon which the deportation order is based." 8 U.S.C. § 1105a(a)(4) (1994).[2] We must uphold that decision if it is supported by substantial evidence on the administrative record considered as a whole. I.N.S. v. Elias-Zacharias, 502 U.S. 478, 481 (1992).

---

[2]Though repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the former 8 U.S.C. § 1105a governs this appeal because Awale's removal proceedings commenced before April 1, 1997. See Kratchmarov v. Heston, 172 F.3d 551, 552 n.2 (8th Cir. 1999).

The BIA's opinion cited 8 C.F.R. § 208.13(b)(1)(i) but did not clarify whether it found the presumption rebutted by changed country conditions or by Awale's ability to relocate to a different region of Somalia. The BIA seemed to base its decision on the ability-to-relocate ground because it stated that Awale "could avoid persecution through relocation within Somalia," relied on her living in Baidoa without incident for more than four years, and cited a prior decision that turned on the alien's ability to relocate, In re C-A-L-, 21 I&N Dec. 754, 757-58 (BIA 1997). However, the government's brief on appeal defends the BIA's decision primarily on the ground of changed country conditions. Therefore, we will consider both grounds, bearing in mind that the BIA's assumption of past persecution means that the government must rebut a presumption that Awale has the requisite well-founded fear of future persecution if she returns to Somalia.

**Changed Country Conditions.** On appeal, the government argues that a December 1996 Department of State report entitled, "Somalia: Profile of Asylum Claims and Country Conditions," establishes that conditions in Somalia "have measurably improved." We agree that, in seeking to rebut the presumption, the government may rely on State Department reports assessing country conditions as they relate to the likelihood of future persecution. See Navarijo-Barrios v. Ashcroft, 322 F.3d 561, 564 (8th Cir. 2003). However, to rebut the presumption, "changes in country conditions must be shown to have negated the particular applicant's well-founded fear of persecution." Fergiste v. I.N.S., 138 F.3d 14, 19 (1st Cir. 1998).

In this case, Awale was persecuted by Hawiye clan militia in Mogadishu. She fled to Baidoa where she lived without incident for four years, concealing her clan identity. UN peacekeepers then left Baidoa, and the city was overrun by the same Hawiye militia that persecuted the Awale family in February 1991. The Department of State and United Nations reports in the administrative record refer to improved conditions in Somalia generally but note the absence of a central government and continuing clan-based strife in Baidoa and Mogadishu. The reports support Awale's

testimony that, when she left Baidoa in November 1995, "there were raids, and rapes similar to what I had experienced in Mogadishu." The reports contain no information regarding the current status of the Galgale clan but state generally that members of minority clans continue to be harassed. These reports fail to rebut Awale's well-founded fear of future persecution if she must return to Baidoa or to Mogadishu. See Krastev v. I.N.S., 292 F.3d 1268, 1276-77 (10th Cir. 2002). We therefore conclude that the administrative record contains no evidence demonstrating the "fundamental change in circumstances" necessary to rebut the presumption of a well-founded fear on this ground. 8 C.F.R. § 208.13(b)(1)(i)(A).

**Ability To Relocate.** The regulations provide that the government may rebut a presumption of well-founded fear with evidence that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(B). Here, the BIA concluded that "decreased inter-clan conflict and [Awale's] demonstrated ability to live in Somalia without further incident for more than 4 years are sufficient to overcome the presumption." As in Hagi-Salad, 359 F.3d at 1048, this analysis ignores the broader relocation inquiry mandated by the recently amended regulations:

> (3) *Reasonableness of internal relocation.* For purposes of determinations under paragraph[] (b)(1)(i) . . . of this section, adjudicators should consider, but are not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties. Those factors . . . are not necessarily determinative of whether it would be reasonable for the applicant to relocate.

8 C.F.R. § 208.13(b)(3). The relocation inquiry is inherently complex in Somali asylum cases because there is no central government and local conditions reportedly

depend on the effectiveness of regional clan-based authorities. Neither the IJ nor the BIA opinion acknowledged this complexity.

As we have already noted, the BIA's reliance on Awale's four-year stay in Baidoa does not establish that she could reasonably relocate to Baidoa today. The same USC militia that persecuted the Awale family in Mogadishu took over Baidoa by force shortly before Awale fled. The mid-1990's State Department and UN reports in the administrative record describe continuing clan-based fighting in Baidoa, with USC forces still in control of the city. This evidence does not meet the government's burden to prove that it would be reasonable for Awale to relocate or return to Baidoa at this time. As for relocation to a place in Somalia other than Mogadishu or Baidoa, while the State Department reports note decreased inter-clan fighting in many regions, its 1996 Profile reported:

> Whether fears based on clan or sub-clan membership are well founded would depend on the nature and durability of the alleged threat and particularly on the applicant's physical location in the country. A person belonging to one clan might well be in serious danger if found in the territory of a rival clan but face no problem whatever if in an area controlled by his own fellow clansmen.

Here, Awale testified that she is a member of the Galgale, a minority clan that does not control any area. She does not know whether any family members remain in Somalia, and she has no home to which she can return. The government reports note that members of minority clans continue to be "subjected to harassment, intimidation, and abuse by armed gunmen of all affiliations," that travel is difficult because rival groups control routes of transportation, and that women "who lack the protection of powerful clan structures or who belong to particularly vulnerable groups, such as ethnic minorities, are particularly at risk." We conclude that the administrative record does not contain substantial evidence rebutting the presumption of a well-founded fear with proof that Awale could reasonably relocate.

-7-

For the foregoing reasons, we conclude that, if Awale has established past persecution on the basis of clan membership or another statutory ground -- an issue the BIA did not resolve -- substantial evidence does not support the BIA's decision that the government rebutted the resulting presumption of a well-founded fear of future persecution.  Accordingly, we remand to the BIA for further proceedings not inconsistent with this opinion.  On remand, the BIA may permit "the presentation of further evidence of current circumstances" in Somalia.  I.N.S. v. Ventura, 537 U.S. 12, 18 (2002).  Given our disposition of the asylum appeal, we remand the denial of withholding of removal as well.  See Hagi-Salad, 359 F.3d at 1045 n.1.

_____