# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2386

_____

Rewunda Mohammed Bushira,     *
   *
       Petitioner,    *
   *     Petition for Review of an
     v.    *     Order of the Board of
   *     Immigration Appeals.
Alberto Gonzales, Attorney    *
General of the United States of    *
America,    *
   *
       Respondent.    *

_____

Submitted:  December 12, 2005
Filed:  April 4, 2006

_____

Before BYE, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Rewunda Mohammed Bushira, a thirty-six-year-old native and citizen of Ethiopia, petitions for review of a final order of removal of the Board of Immigration Appeals ("BIA"). The BIA affirmed, without opinion, the decision of the immigration judge ("IJ") denying Bushira's application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). For the reasons given below, we remand to the BIA for further administrative proceedings.

## I.    BACKGROUND

Bushira entered the United States in August 2001 as a nonimmigrant visitor, remained beyond her authorized stay of three months, and then applied for asylum, withholding of removal and relief under the CAT.   The Immigration and Naturalization Service ("INS")[1] commenced removal proceedings in July 2002. Bushira conceded removability but renewed her application for asylum, withholding of removal and CAT relief.  Bushira declined to designate a country of removal.  The IJ designated Ethiopia.  Bushira's application alleged past persecution and fear of future persecution in Ethiopia because of her Oromo ethnicity and the participation of her family and her in political activities supporting the Oromo people.

Bushira was the only witness to testify at the hearing before the IJ on November 19, 2003.  Bushira testified that she was born in Dilla, Ethiopia, and is of Oromo ethnicity.     Bushira's application indicates that her father was imprisoned from 1986 to 1989.  Bushira testified that in July 1992 her father was beaten and then imprisoned for one year because he supported the economic development and self-determination of the Oromos.  Bushira's mother was beaten and then imprisoned for one week. Bushira's parents were released after they signed agreements not to participate in Oromo affairs.  Bushira believes that her parents and five siblings are living in a refugee camp in Kenya, but the last time she communicated with her family was in 1994.

In 1992 Bushira joined the Oromo Music Band ("Band") in Ethiopia.  The Band was organized by the Oromo Liberation Front ("OLF") with the goal of promoting the

---

[1]The INS ceased to exist on March 1, 2003, and its functions were transferred to the new Department of Homeland Security ("DHS").  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

Oromo culture. Bushira sang and danced with the Band in approximately seven performances over a period of months. Although Bushira does not know the Oromo language, she memorized the songs. Bushira also testified that she was a registered member of the OLF and participated in other Oromo political meetings. However, she was not involved in political activities after she quit the Band.

Soldiers arrested Bushira at her home in August 1992, accusing her of circulating political pamphlets. Bushira testified that she was imprisoned in Dilla for two months in a dark, empty cell with a dirt floor. She was isolated from other prisoners but could hear them crying. For approximately two weeks, she was beaten. Bushira's affidavit states that she was hung upside down, beaten on the soles of her feet and silenced by pieces of cloth in her mouth. She also was raped several times by two soldiers. Bushira explained that upon her release, she had to agree not to participate in the Band or other Oromo activities and not to communicate with other Oromos. She also was forced to sign in daily at the police station in Dilla for six months, and sometimes the authorities followed her. Allegedly due to this surveillance, in January 1994 Bushira left Dilla without informing the authorities. She lived in hiding with her aunt in Addis Ababa, Ethiopia, located approximately 360 kilometers from Dilla.

In 1996 Bushira's aunt paid an employment agency to obtain a passport and exit visa for Bushira and arrange for Bushira to work in Saudi Arabia. The passport was issued by the Ethiopian government, and the Ethiopian Embassy in Saudi Arabia renewed the passport in 1998 and 2000. In Saudi Arabia, Bushira worked as a housemaid for the family of Ahmed Abdullah Mohammed. Bushira testified that there she was treated like a slave and raped by two men.

Bushira explained that she returned to Ethiopia twice in 1998 because of the way she was being treated in Saudi Arabia. The first time she stayed for about six

weeks. Then after one month back in Saudi Arabia, Bushira visited Ethiopia again for approximately fifteen days. On these visits, Bushira stayed with her aunt in Addis Ababa. Bushira explained that she was able to travel from Saudi Arabia to Addis Ababa, Ethiopia, because the police were looking for her only in Dilla. However, Bushira's aunt sent her back to Saudi Arabia because her aunt was afraid for Bushira's life upon learning that the police from Dilla still were looking for Bushira.

In August 2001 Bushira entered the United States with her Saudi Arabian employer as a babysitter for the family's two daughters. Bushira's employer prepared her application for a nonimmigrant visa to the United States, and Bushira signed it. The application indicated that Bushira worked as a housemaid for an ambassador, but Bushira testified that she did not know whether Ahmed Abdullah Mohammed was an ambassador to Saudi Arabia. Bushira recounted that her employer kept Bushira's passport during their three days in New York and their subsequent stay in Minneapolis, Minnesota. Bushira found the passport and took it. She remained in Minneapolis, living with Oromos unrelated to her.

Bushira's aunt wrote a letter to her around August 2003, warning that Oromos were being tortured and killed and that if Bushira returned, she also would be imprisoned or killed. According to Bushira's testimony, there is no place in Ethiopia that would be safe for her because she left Dilla without telling the authorities and the government soldiers could find her anywhere and take revenge.

Following the evidentiary hearing, the IJ rendered an oral decision on January 20, 2004, denying Bushira's application for relief. Without first determining whether Bushira had suffered past persecution, the IJ found that Bushira lacked a subjectively genuine fear of future persecution in Ethiopia. The BIA summarily affirmed. Bushira petitions this Court for review of the denial of her application for asylum, withholding of removal and relief under the CAT.

## II.    DISCUSSION

Where the BIA affirms without opinion, the court reviews the IJ's decision as the final agency action. *Hoxha v. Gonzales*, 432 F.3d 919, 920 (8th Cir. 2006). We review questions of law de novo, according substantial deference to the BIA's interpretation of the statutes and regulations it administers. *Bernal-Rendon v. Gonzales*, 419 F.3d 877, 880 (8th Cir. 2005). We review factual findings for substantial evidence on the administrative record as whole. *Alyas v. Gonzales*, 419 F.3d 756, 760 (8th Cir. 2005). Under this standard, we will uphold the BIA's denial of relief unless the evidence presented "was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Abrha v. Gonzales*, 433 F.3d 1072, 1075 (8th Cir. 2006) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)).

The Attorney General has discretion to grant asylum to an individual who is a "refugee." 8 U.S.C. § 1158(b)(1). The asylum applicant must establish that she is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is defined as an alien who is "unable or unwilling to return to . . . [the country of removal] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A well-founded fear of persecution is one that "is both subjectively genuine and objectively reasonable." *El-Sheikh v. Ashcroft*, 388 F.3d 643, 646 (8th Cir. 2004).

The IJ set forth this legal framework at the outset of his decision. However, the IJ did not acknowledge that proof of past persecution entitles the asylum applicant to a presumption that she has a well-founded fear of future persecution if she returns to the country. *See* 8 C.F.R. § 208.13(b)(1); *Awale v. Ashcroft*, 384 F.3d 527, 529 (8th Cir. 2004). If the applicant establishes past persecution, the burden shifts to the DHS to rebut the presumption of a well-founded fear of future persecution. 8 C.F.R. §

208.13(b)(1)(ii). The DHS may do this only by establishing by a preponderance of the evidence either that there has been a "fundamental change in circumstances" in the country such that the applicant no longer has a well-founded fear of persecution based on a protected ground, 8 C.F.R. § 208.13(b)(1)(i)(A), or that "the applicant could avoid future persecution by relocating to another part of" the country and it would be reasonable for her to do so. 8 C.F.R. § 208.13(b)(1)(i)(B), (b)(3)(ii).

Bushira argues that the IJ committed legal error in failing to make a finding on the issue of whether she suffered past persecution. As a result of this error, Bushira contends, she was not given the benefit of the presumption of a well-founded fear of future persecution to which she was entitled. The government asserts that the IJ concluded that Bushira failed to demonstrate past persecution and that this finding, along with the finding of no well-founded fear of future persecution, is supported by substantial evidence.

The IJ's denial of asylum was based solely on his determination that Bushira does not have a subjectively genuine fear of future persecution in Ethiopia. A careful review of the IJ's opinion reveals that the IJ did not make a finding on whether Bushira suffered past persecution due to a protected ground. Nowhere in the decision does the IJ offer "specific, cogent reasons for disbelief" of Bushira's testimony about past persecution, as is required when an IJ rejects testimony as lacking credibility. *See Eta-Ndu v. Gonzales*, 411 F.3d 977, 982 (8th Cir. 2005). While we acknowledge that some of the evidence examined by the IJ may be relevant to the issue of whether Bushira was persecuted in the past on account of a protected ground, we cannot conclude that these isolated fact findings are the equivalent of a finding of no past persecution.

Indeed, it appears that the IJ generally credited Bushira's testimony about past persecution. The IJ stated that Bushira "has told a generally consistent story as to

what happened to her in Ethiopia and in Saudi Arabia" and that a minor discrepancy regarding the dates of her participation in the Band would not "warrant a denial of the claim." However, he also noted that there was "very minimal corroboration" in Bushira's case. Aside from the letter from Bushira's aunt warning Bushira that the police were still looking for her, the IJ found "nothing else from Ethiopia regarding [Bushira's] participation in Oromo activities in 1992, or describing any abuse or persecution she suffered. Likewise, we have nothing from [Bushira's] family, which is asserted to be in Kenya." Later in the decision the IJ stated, "There is no real indication that she participated in any OLF activities in Ethiopia. There has been no real proof of her being a member of the OLF. . . . [We also] have no corroboration from the OLF itself of her father's involvement." Instead of making a finding on past persecution, however, the IJ proceeded to analyze whether Bushira had proved a subjectively genuine fear of future persecution.[2]

The IJ explained that Bushira's "involvement in Oromo activities in Ethiopia was of a relatively short duration." The IJ also discussed Bushira's ability to obtain a passport at a time she allegedly was in hiding with her aunt in Addis Ababa, to renew the passport twice and to secure exit visas from the Ethiopian authorities both in Ethiopia and at the Ethiopian Embassy in Saudi Arabia. According to the IJ, what

---

[2]Even if the IJ's comments on the lack of corroboration could be construed as a finding that Bushira failed to meet her burden of proof on past persecution due to a protected ground, this decision could not be sustained. We cannot sustain a denial of asylum based upon the absence of corroborating evidence if "the BIA failed to: (1) rule explicitly on the credibility of [the applicant's] testimony; (2) explain why it was reasonable in this case to expect additional corroboration; or (3) assess the sufficiency of [the applicant's] explanations for the absence of corroborating evidence." *El-Sheikh*, 388 F.3d at 647 (quoting *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000)). The IJ in this case never explicitly ruled that Bushira's testimony on past persecution was not credible. The IJ did not explain why it would be reasonable to expect corroboration of this testimony nor did he assess any explanations for the absence of such corroboration.

"tips the balance" to a finding that Bushira lacked a subjectively genuine fear of returning to Ethiopia is her two return trips to Ethiopia in a short period of time. The IJ explained, "If there had been just one trip back to Ethiopia, the Court might find the respondent's explanation of learning about the police still looking for her as having some validity. But she made two trips back, which files [sic] in the face of her concerns about the police in Ethiopia actually looking for her." The IJ determined that Bushira failed to prove the "subjective basis" of her fear of future persecution and concluded that she did not have a well-founded fear of future persecution if she returned to Ethiopia.

In short, the IJ placed the burden on Bushira to demonstrate a well-founded fear of future persecution without making the antecedent determination as to whether Bushira established past persecution. Bushira alleged past persecution in her application. On remand, if she establishes past persecution on account of a protected ground, an issue on which we express no view, Bushira is entitled to a presumption of a well-founded fear of future persecution.

We have held that the failure to shift the burden does not necessarily require a remand. *See Cigaran v. Heston*, 159 F.3d 355, 357 (8th Cir. 1998) (stating that the "shifting of an evidentiary burden of preponderance is of practical consequence only in the rare event of an evidentiary tie"). However, this case is distinguishable from *Cigaran*. The asylum applicant in *Cigaran* argued that the BIA erroneously made a finding that he had not suffered past persecution. *Id.* We explained that even if the BIA had found past persecution, "the record makes it clear . . . that the BIA believed that the preponderance of the evidence established that Mr. Cigaran's fear of future persecution was not objectively reasonable," and substantial evidence supported the BIA's finding of changed political circumstances in the country of removal. *Id.* at 358. Unlike the situation in *Cigaran*, in the present case the IJ denied relief based solely on his determination that Bushira lacked a subjectively genuine fear of future

persecution. We cannot say that the IJ believed that the DHS established either of the two permissible grounds for rebutting the presumption. *See* 8 C.F.R. § 208.13(b)(1)(i)-(ii).

First, the IJ did not make a finding that circumstances had fundamentally changed in Ethiopia. *See De Brenner v. Ashcroft*, 388 F.3d 629, 636 (8th Cir. 2004) ("The DHS may rebut [the] presumption through showing by preponderant evidence that country conditions in the country of origin have undergone a 'fundamental change' from the time of the persecution and that the fundamental change is sufficient to eliminate the basis for the applicant's fear of future persecution."). The IJ's only reference to conditions in Ethiopia appears in his description of the exhibits, where the IJ noted that a 2003 country report on Ethiopia stated that "the government is still involved in a conflict with the [OLF], and that OLF members and supporters have been detained during the year covered by the report." Second, the IJ simply did not address whether it would be reasonable for Bushira to relocate within Ethiopia based on the factors in 8 C.F.R. § 208.13(b)(3). *See Hagi-Salad v. Ashcroft*, 359 F.3d 1044, 1048 (8th Cir. 2004).

"When the BIA applies an incorrect legal standard, the proper remedy typically is to remand the case to the agency for further consideration in light of the correct standard." *Corado v. Ashcroft*, 384 F.3d 945, 948 (8th Cir. 2004) (per curiam) (holding that the IJ applied an impermissible definition of persecution in finding no past persecution and remanding for a determination in the first instance whether the testimony on past persecution was credible, and if so, "then the BIA, rather than this court, should first consider the Attorney General's arguments that evidence of changed circumstances in Guatemala or the ability of petitioners to relocate safely within the country is sufficient to rebut a presumption of future persecution"); *see also De Brenner*, 388 F.3d at 639 (remanding where the BIA erroneously placed the burden of proof on the asylum applicants to show changed country conditions).

Because the IJ failed to make a determination as to whether Bushira established past persecution based on a protected ground and made no findings on changed circumstances or ability to relocate under 8 C.F.R. § 208.13(b)(1)(i), the appropriate remedy is to remand for the BIA to make a determination on past persecution and then to assign the burden of proof on fear of future persecution in accordance with the immigration regulations. *See INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam).

## III.    CONCLUSION

For the reasons stated, Bushira's petition for review is granted, the BIA's order is vacated and the case is remanded to the BIA for proceedings consistent with this opinion. Given our disposition of Bushira's asylum appeal, we also remand the denial of withholding of removal and relief under the CAT.

_____