# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1702

_____

Aminta Barco Corado; Karen Aquino    *
Barco; Jose Aquino Barco,    *
   *
   Petitioners,    *
   *  Petition for Review of an
   v.    *  Order of the Board of
   *  Immigration Appeals.
John Ashcroft, Attorney General of    *
the United States of America,    *  [PUBLISHED]
   *
   Respondent.    *

_____

Submitted: August 6, 2004
Filed: October 7, 2004

_____

Before MELLOY, LAY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Aminta Barco Corado (Barco Corado) and her children Karen Aquino Barco (Karen) and Jose Aquino Barco (Jose), citizens of Guatemala, petition for review of an order of the Board of Immigration Appeals (BIA) affirming an immigration judge's denial of their applications for asylum and withholding of removal. We grant the petition and remand the case to the BIA for further proceedings.

Barco Corado testified that in her native village in Guatemala, she was a visible member of an opposition political party, the Union del Centro Nacional (UCN), during 1993 and 1994. She testified that she was raised by her uncle, Humberto Quinones Corado, a prominent party member. She explained that her uncle was murdered on February 14, 1994, and that she found him as he lay dying from gunshot wounds. She said that she was told that policemen aligned with the predominant political party, Movimiento de Acción Solidaria (MAS), were responsible for the murder, and that her uncle was targeted because of his UCN affiliation. Almost immediately after the murder, according to her testimony, Barco Corado was visited in her home on four occasions by MAS members who told her that she and her children would be harmed or killed unless she provided information about UCN. She testified that on each visit the threats escalated, and that on the fourth, she was beaten and told by four men wearing MAS armbands that she would "end up dead like [her] uncle" if she did not leave the country. Barco Corado testified that she and the children fled Guatemala two days later, and that she applied for asylum within three months of her arrival.

An alien is eligible for asylum if she establishes that she is unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The BIA is entitled to deference in interpreting ambiguous statutory terms such as "persecution," so long as its interpretation is reasonable and consistent with the statute. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). If the BIA applies a permissible legal standard, then we will overturn a factual finding only if the evidence is so compelling that no reasonable factfinder could fail to conclude that the alien suffered past persecution. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

The immigration judge in this case concluded that Barco Corado had failed to establish that she suffered past persecution in Guatemala on account of her political

opinion. In so concluding, the immigration judge made no credibility findings regarding her testimony. Instead, he reasoned that "the single alleged incident involving four MAS members at her home in early 1994 [does not] constitute a pattern and practice of mistreatment that rises to the level of persecution." (R. 104).

Barco Corado argues that the immigration judge adopted an impermissible definition of "persecution," and we agree. To be sure, we have said that minor beatings and brief detentions do not necessarily constitute "persecution," *Eusebio v. Ashcroft*, 361 F.3d 1088, 1091 (8th Cir. 2004); *Al-Tawm v. Ashcroft*, 363 F.3d 740, 743 (8th Cir. 2004), and that the BIA may consider whether an act of violence by the government is an isolated event or part of a continuing effort to persecute a specific individual. *Ngure v. Ashcroft*, 367 F.3d 975, 990 (8th Cir. 2004). But while the alleged beating of Barco Corado at her home did not require outside medical attention, (R. 172), she also testified that government agents threatened her with death on account of her political activity, and invoked the recent death of her uncle, Humberto Quinonez Corado, implying that the government was responsible for his murder.

We have never held that a specific, credible, and immediate threat of death on account of political opinion is outside the definition of "persecution," just because it occurs during a single incident. We consistently have defined persecution to include "the infliction or threat of death" on account of a factor enumerated in the statute, without any suggestion of a "pattern and practice" requirement. *Rife v. Ashcroft*, 374 F.3d 606, 612 (8th Cir. 2004); *Ngure*, 367 F.3d at 989-90; *Al-Tawm*, 363 F.3d at 743; *Regalado-Garcia v. INS*, 305 F.3d 784, 787 (8th Cir. 2002). The BIA itself has concluded that where an alien presents direct and uncontradicted testimony "that he and his immediate family members were singled out and threatened with death," and where the alien's testimony "established a link between the threatened harm and his political beliefs," then the alien had "good reason to fear persecution." *Matter of Villalta*, 20 I. & N. Dec. 142, 147 (BIA 1990). It may be that not all alleged threats

of death necessarily amount to persecution. The situation may be different, for example, where a factfinder concludes that threats are exaggerated, non-specific, or lacking in immediacy, or where there is insufficient evidence that the threats are based on a ground enumerated in the statute. But by requiring the petitioners to show a "pattern and practice of mistreatment" in a case that does involve an alleged specific threat of imminent death based on political opinion, we believe that the immigration judge applied an impermissible definition of "persecution."

When the BIA applies an incorrect legal standard, the proper remedy typically is to remand the case to the agency for further consideration in light of the correct standard. *E.g.*, *Asani v. INS*, 154 F.3d 719, 723 (7th Cir. 1998) (incorrect definition of "persecution"). We follow that course here, because the immigration judge never determined whether Barco Corado's testimony about the threat of death was credible. The immigration judge found only that the "alleged incident" did not amount to persecution under the incorrect legal standard that required a "pattern and practice of mistreatment."

There is some evidence in the record to support Barco Corado's credibility. Her children corroborated her testimony in some respects; she presented documentary evidence of membership in a political party; and she presented medical evidence of post-traumatic stress disorder, which she said resulted from events in her home country, including vivid memories of the aftermath of her uncle's assassination. (R. 278, 283). On the other hand, while Barco Corado's testimony emphasized the trauma of finding her uncle immediately after he was shot in February 1994, and described the reference to her uncle's death by MAS members who visited her home shortly thereafter, her original application for asylum in June 1994 never mentioned an uncle. (R. 300-04). She also testified that her uncle raised her from childhood after her parents separated and her mother died, (R. 167-68), but their respective ages may cast some doubt on this relationship. The uncle's death certificate, admitted into evidence, reported that he was a single farmer aged 32 years old at the time of his death in 1994,

(R. 382-83), while Aminta Barco Corado was 34 years old in February 1994. (R. 300). Further complicating matters, Barco Corado's daughter, who was 14 years old in February 1994, submitted an asylum application in 2000 identifying Humberto Quinones Corado as *her* uncle, (R. 456), a representation that seems consistent with the relative ages, but raises questions about Barco Corado's testimony. Whether the "alleged incident" of March 1994 occurred should be determined in the first instance by the immigration judge and the BIA.

We also believe that, assuming the BIA were to conclude that Barco Corado's testimony is credible, the BIA should determine in the first instance whether the petitioners have established a well-founded fear of future persecution. *See INS v. Ventura*, 537 U.S. 12 (2002) (per curiam). If there is a finding of past persecution, then the BIA, rather than this court, should first consider the Attorney General's arguments that evidence of changed circumstances in Guatemala or the ability of petitioners to relocate safely within the country is sufficient to rebut a presumption of future persecution. *Id*. at 18. We express no view on these questions.

For the foregoing reasons, we grant the petition for review and remand the case to the BIA for further proceedings consistent with this opinion.