# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1262

_____

Bogale Assefa Tegegn

*Petitioner*

v.

Eric H. Holder, Jr., Attorney
General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 17, 2012
Filed: January 11, 2013

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Bogale Assefa Tegegn, a 68-year-old citizen of Ethiopia, lawfully entered the United States in February 2008 and timely applied for asylum, withholding of removal, and relief under the Convention Against Torture. An immigration judge (IJ) denied relief after a hearing, rejecting Tegegn's claims of past persecution and a well-founded fear of future persecution based primarily on his political opinion. The

Board of Immigration Appeals (BIA) dismissed Tegegn's administrative appeal in an opinion agreeing with the IJ's determinations but not adopting her opinion. Tegegn petitions for judicial review of the BIA's final agency action. We conclude that substantial evidence on the administrative record as a whole supports the BIA's determination that Tegegn failed to demonstrate past persecution. See Kebede v. Gonzales, 481 F.3d 562, 564 (8th Cir. 2007) (standard of review). However, the BIA did not adequately consider one aspect of his distinct claim of a well-founded fear of future persecution that was supported by credible testimony and by other record evidence including State Department Human Rights Reports. Accordingly, we grant the petition for review and remand for further consideration of this issue.

## I. Past Persecution

The Attorney General has discretion to grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1)(A). As relevant here, the term refugee means a person unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant who establishes past persecution is presumed to have a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(1). Thus, a credible claim of past persecution must usually be resolved before the IJ and the BIA consider a claim of well-founded fear of future persecution. Compare Bushira v. Gonzales, 442 F.3d 626, 632-33 (8th Cir. 2006), with Pavlovich v. Gonzales, 476 F.3d 613, 617 (8th Cir. 2007).

"Persecution is an extreme concept that does not encompass low-level intimidation and harassment." Ladyha v. Holder, 588 F.3d 574, 578 (8th Cir. 2009). Absent a showing of physical harm, incidents of harassment, unfulfilled threats of injury, and economic deprivation are not persecution. Quomsieh v. Gonzales, 479 F.3d 602, 606 (8th Cir. 2007). A threat of death on account of political opinion can be enough to establish past persecution, but "not all alleged threats of death

necessarily amount to persecution," for example, threats that are exaggerated, non-specific, lacking in immediacy, or not based on a protected ground. Corado v. Ashcroft, 384 F.3d 945, 947-48 (8th Cir. 2004). We will affirm the BIA's determination that an alien has failed to prove past persecution unless the evidence was so compelling that no reasonable fact finder could fail to find to the contrary. Ladyha, 588 F.3d at 577.

Tegegn submitted detailed evidence of the political conditions he experienced in Ethiopia in his July 2008 Form I-589 asylum application, a lengthy February 2010 affidavit, and testimony at the March 2010 hearing. The IJ found him to be a credible witness. To briefly summarize this evidence, the Ethiopian People's Revolutionary Democratic Front (EPRDF), formed by the Tigray People's Liberation Front (TPLF), became the ruling party in Ethiopia in 1991 after the prior Marxist government was overthrown. Tegegn, a college-educated member of the dominant Amhara ethnic group with experience in agronomy and farm management, was then working at the Addis Ababa University Library. He resisted repeated requests that he join the TPLF. In 1995, he instead joined the All-Amhara People's Organization (AAPO), an ethnically-based opposition party. He was soon demoted at the University Library and ultimately dismissed in 1999.

After initially serving as secretary of an AAPO regional office, Tegegn rose to leadership positions, serving at times as a member of the Central Committee and the Executive Committee, as chairman of the party newspaper Editorial Board, and as Secretary General, First Vice President, and member of the National Congress. These last positions provided "an opportunity to meet with other opposition political party leaders, foreign embassies, international organizations and international news media." He published over two hundred articles commenting on the government in private and AAPO publications, including a 2004 book entitled The Great Conspiracy that criticized the TPLF party's ownership and control of Ethiopian industries. Tegegn entered the United States in February 2008. His wife visited him in May, stayed two

months, and returned to Ethiopia to be with their grown children. His family has continued to live in Ethiopia unharmed, although his wife was dismissed from her job at a government-run television station in July 2009.

Tegegn's bases his claim of past persecution on the following incidents:

-- While in Ethiopia, he received repeated threats, harassment, and warnings over the years in response to his AAPO activities and his writings.

-- In 2002, while he was walking to the AAPO office, other pedestrians warned Tegegn that a car was about to hit him from behind. He jumped out of the way, and the car sped away. While walking home from the AAPO office that evening, a young man approached and said, "you saved yourself from the accident . . . you will get [it], don't worry." Though he could not identify the car, its driver, or the young man, Tegegn testified that this type of hit-and-run attack was a method the government used to eliminate its political opponents.

-- Although his 2004 Conspiracy book was published by a government publisher, officials warned him to stop his anti-government writings with comments such as, "This is against our bread." An affidavit by Tegegn's wife averred that she was repeatedly warned to tell her husband to quit participating in the AAPO and publishing articles. "If he does not stop," one unidentified person said, "you will get his dead body in front of your gate." Their children received similar threats.

-- In 2005, after participating in contested national elections, opposition parties took to the streets in protest when the ruling party announced it had won. Security forces responded by arresting opposition leaders and thousands of demonstrators. Hundreds were killed, and some were imprisoned for long periods. Tegegn testified that he avoided imprisonment by hiding with relatives and friends for three months.

-- Tegegn's wife's affidavit recites that, after he left for the United States, she received calls from unknown persons asking his whereabouts. When she said he was undergoing medical treatment and would return when it was finished, they told her they wanted him back by the end of August 2009.

On appeal, Tegegn argues that the 2002 hit-and-run incident -- a "specific, credible, and immediate threat of death on account of political opinion" -- established past persecution. Corado, 384 F.3d at 947. We disagree. Tegegn testified this was a method often used by the government to eliminate political opponents. But he presented no evidence corroborating that opinion. Because the car approached Tegegn from behind, there is no compelling evidence that this was an intentional assault; if it was, Tegegn was unable to identify his attackers. Thus, the record fully supports the IJ's findings that "there is no evidence that ties the car to the government," and it is undisputed that Tegegn remained in Ethiopia unharmed for years following this incident. After careful review, we conclude the administrative record amply supports the BIA's finding that Tegegn suffered only intimidation, harassment, and unfulfilled threats of physical injury that did not establish past persecution. See Malonga v. Holder, 621 F.3d 757, 764, 766 (8th Cir. 2010) (upholding BIA's finding of no past persecution because death threats were "exaggerated, nonspecific, or lacking in immediacy"); Quomsieh, 479 F.3d at 606.

## II. Well-Founded Fear of Future Persecution

Even if an applicant fails to establish past persecution, he can qualify for asylum by showing well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(2). To be well-founded, the applicant's fear of future persecution must be "both subjectively genuine and objectively reasonable." Eta-Ndu v. Gonzales, 411 F.3d 977, 983 (8th Cir. 2005). In most cases, this requires a showing of an objectively reasonable fear of *particularized* persecution on the basis of his political opinion. Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997). However, an applicant can also

prove a well-founded fear by showing (A) a "pattern or practice . . . of persecution of a group of persons similarly situated to the applicant on account of . . . political opinion," and (B) "his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable." 8 C.F.R. § 208.13(b)(2)(iii); see Makonnen v. INS, 44 F.3d 1378, 1382-83 (8th Cir. 1995). "A pattern or practice of persecution must be systemic, pervasive, or organized." Woldemichael v. Ashcroft, 448 F.3d 1000, 1004 (8th Cir. 2006) (quotation omitted).

Tegegn argues the BIA erred in finding that he failed to prove a well-founded fear of persecution based upon the Ethiopian ruling party's pattern or practice of persecuting leaders of opposition political groups. His Memorandum to the IJ, though focused primarily on the issue of past persecution, clearly raised this issue:

> Ethiopia today is a classic lawless dictatorship. . . . Political opponents are regularly killed with impunity, including members of the AAPO. Security forces know that they can torture and kill people whenever they choose, and a corrupt judiciary will do nothing. . . . Bogale Tegegn believes that if he is sent back to Ethiopia he will be a target of the security forces.

Likewise, his brief to the BIA included this issue, arguing that State Department and other reports in the administrative record established-

> a deadly pattern and practice of killing, imprisonment and permanent disappearance of political opponents. This is true not only for AAPO leaders but also for leaders of other opposition parties in Ethiopia. Tegegn is clearly a vocal leader of a major opposition party, and is "similarly situated."

In support of this pattern or practice claim, Tegegn testified that he was a long-time leader of the AAPO, an opposition group, and knew of two AAPO leaders and another member who were killed, one in 1999 and two in 2002. His affidavit listed,

by name and political affiliation, dozens of government opponents who allegedly have "disappeared" or been killed, harmed, or imprisoned by the current Ethiopian regime, or who fled the country. He submitted two affidavits corroborating his testimony that he is an AAPO leader, testimony the IJ found credible. The lengthy affidavit of Dr. Bekele Mamo, an Ethiopian citizen who is now a lawful permanent resident of this county, averred that "[t]he Ethiopian government continues to carry out terror and systematic social and political assaults to punish critics and opposition activists." Dr. Mamo described new laws -- detailed in an Amnesty International report -- that subject non-violent political dissenters to broad police powers and harsh criminal penalties. Dr. Mamo stated that Tegegn "is a selected opposition party member being sought after and may already be on their 'black' list," and that return to Ethiopia would endanger his life.

The administrative record also includes 2008 and 2009 State Department Human Rights Reports and other sources detailing examples of disappearances, killings, arrests, beatings, and other abuses by the government against leaders and members of opposition political groups. Though most widespread after the contested 2005 election, when Tegegn testified he went into hiding to avoid imprisonment, the abuses apparently continue. For example, the 2009 State Department Report stated, "Human rights abuses reported during the year included unlawful killings, torture, beating, abuse and mistreatment of detainees and opposition supporters by security forces, often acting with evident impunity." In addition, the Report states, "The government continued to arrest, harass, and prosecute journalists, publishers, and editors."

After analyzing Tegegn's claim of past persecution in some detail, the BIA gave this claim of well-founded fear little or no consideration. The BIA began by characterizing Tegegn's pattern or practice claim as "based on his membership and active support of the [AAPO]." That unduly limits the claim. While Tegegn's claim of past persecution focused on his leadership positions in the AAPO, his claim of a

well-founded fear of future persecution was explicitly based on the government's alleged pattern or practice of persecuting leaders or active supporters of all opposing political groups. He explained that the government has kept opposition political parties fractured by requiring them to organize along ethnic lines, and then has suppressed opposition by systematically persecuting any leaders who persist in opposing the government. This is a not-implausible claim of pattern or practice political persecution. Such persecution can be confined to a particular opposing political party or ethnic group, but it can also be directed at a broader group made up of all who assume leadership of groups opposing the group in power. Compare Kyaw Zwar Tun v. INS, 445 F.3d 554, 570 (2d Cir. 2006) (remanding for consideration of possible pattern or practice of persecution against pro-democracy activists).

The BIA acknowledged the pattern or practice standard but summarily rejected this claim: "Although [Tegegn] raises a claim that there is a pattern or practice of persecution of persons similarly situated to him, *no cogent argument for its existence has been made*." In light of the extensive evidence we have briefly summarized, and the above-quoted portion of Tegegn's brief to the BIA, we cannot agree that no cogent argument was made.

Asylum claims based on an alleged pattern or practice of political persecution raise complex and difficult issues, particularly in a country such as Ethiopia that is plagued by ethnic rivalries and has experienced dramatic political upheavals. Compare Gemechu v. Ashcroft, 387 F.3d 944, 946-47 (8th Cir. 2004), and Wondmneh v. Ashcroft, 361 F.3d 1096, 1098 (8th Cir. 2004), with Feleke, 118 F.3d at 598-99, and Makonnen, 44 F.3d at 1382-84. In considering such a claim, the relevant political group or groups must be identified, and the applicant's inclusion in the group established. Even if the government has not threatened all members of a political opposition with systematic persecution, the risk that a particular applicant will be persecuted "can rise to the level required for establishing a well-founded fear of persecution . . . as a result of an individual's activities in support of the group."

-8-

Makonnen, 44 F.3d at 1383.  Here, these issues were clearly raised by Tegegn and supported by credible evidence, yet the BIA made no findings regarding either the subjective or objective components of the well-founded fear analysis.  In these circumstances, we must remand because we lack "reasons that are 'specific' enough that a reviewing court can appreciate the reasoning behind the [agency's] decision and perform the requisite judicial review," which in asylum cases is highly deferential.  Singh v. Gonzales, 495 F.3d 553, 557 (8th Cir. 2007).

For these reasons, we grant the petition for review and remand to the BIA for further proceedings not inconsistent with this opinion.

_____