# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1198
_____

Eliu Jeremias Cinto-Velasquez

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 22, 2015
Filed: March 25, 2016
_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Eliu Jeremias Cinto-Velasquez, a native of Guatemala, entered the United States without inspection in 1993 and applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) in November 1993. He returned to Guatemala in 2005 and illegally reentered the United States two years later. Removal proceedings resumed. Cinto-Velasquez petitions for review of the decision of the Board of Immigration Appeals (BIA) denying him asylum and

voluntary departure.[1]  Concluding there is substantial evidence in the administrative record supporting the BIA's decision, we deny the petition for review.

Cinto-Velasquez was born in 1963.  At the April 2013 removal hearing, he testified that he had two encounters with anti-government guerillas in 1992, while he was serving in the Civil Patrol, a group of civilians who were supporting the Guatemalan government in its civil war with the guerrillas.  In both encounters, armed guerillas attempted to recruit Cinto-Velasquez, but he refused.  He fled to the United States after the second encounter, leaving his wife and two children residing in their home town.  In 1997, his wife reported to Guatemalan authorities that unknown men asked her about his whereabouts and threatened to kill him or kidnap one of their daughters.  In 2005, Cinto-Velasquez returned to Guatemala.  He remained two years and testified that he planned to stay indefinitely.  However, in 2006, he received a letter from "Mara 18" gang members demanding a "tax" of 30,000 quetzals (approximately $7,000).  Cinto-Velasquez did not pay the demand, reported the letter to police, and received no additional threats.  He returned to the United States, again leaving his family in Guatemala.

"Subject to certain statutory exceptions, the Attorney General may grant asylum to an alien . . . who proves he is a 'refugee.'" Melecio-Saquil v. Ashcroft, 337 F.3d 983, 986 (8th Cir. 2003), citing 8 U.S.C. § 1158(b)(1).  "Refugee" is defined to include an alien "who is unable or unwilling to return to" his country "because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  A well-founded fear is "subjectively genuine and objectively reasonable." Melecio-Saquil, 337 F.3d at 986 (quotation omitted).  "An applicant who establishes past persecution

---

[1]Cinto-Velasquez's brief states that the issues on appeal include the denial of withholding of removal and relief under the CAT.  However, the brief does not address those issues, and they are therefore waived. See Fed. R. App. P. 28(a)(8).

is presumed to have a well-founded fear of persecution." Tegegn v. Holder, 702 F.3d 1142, 1143 (8th Cir. 2013). Cinto-Velasquez claims he is entitled to asylum because he has a well-founded fear that members of violent Guatemalan gangs, who are former anti-government guerillas, will persecute him on account of his political opinion when he was a member of the Civil Patrol in 1992, and his present membership in a particular social group, namely, "Guatemalan repatriates who have lived and worked in the United States for many years and are perceived to be wealthy."

The IJ denied Cinto-Velasquez's applications for asylum, withholding of removal, CAT protection, and voluntary departure on multiple grounds. He appealed to the BIA, which affirmed the IJ in a detailed opinion. The BIA found: (i) Cinto-Velasquez's two encounters with guerillas in 1992 and the questioning of his wife in 1997 "did not rise to the level of [past] persecution"; (ii) there was no evidence the guerillas were motivated to harm him on account of his political opinion, rather than merely attempting to conscript him; (iii) the 2006 Mara gang extortion letter "did not rise to the level of persecution and was not on account of [his] membership in a particular social group, political opinion, or other [protected] ground"; (iv) his proposed social group of Guatemalan repatriates perceived to be wealthy "is not cognizable" because it "does not have the required social distinction," is "too amorphous," and "lacks the requisite particularity"; (v) Cinto-Velasquez did not demonstrate a well-founded fear of future persecution because the guerilla encounters were years ago, the guerillas disbanded when the civil war ended in 1996, and there is insufficient evidence the government is unable or unwilling to protect him from the criminal gangs responsible for the 2006 extortion demand; and (vi) Cinto-Velasquez "did not meet his burden to demonstrate that it would not be reasonable for him to relocate in Guatemala," as he did not attempt to relocate in 1992 or 2006.

On appeal, Cinto-Velasquez challenges many of the BIA's findings. When the BIA affirms the IJ's findings of fact, the findings "are conclusive unless any

reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "To overturn the IJ's adverse finding, [Cinto-Velasquez] bears the heavy burden of showing that his evidence was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Melecio-Saquil, 337 F.3d at 986, quoting INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

1. Cinto-Velasquez argues that "taken together, all the threats and encounters suffered by Petitioner rise to the level of past-persecution on account of [his] political opinion and particular social group." Here, as in Melecio-Saquil, which involved a similar claim of political persecution based on the Guatemalan civil war, we conclude that the IJ's and BIA's findings are supported by substantial evidence in the administrative record considered as a whole. 337 F.3d at 987. "Absent a showing of physical harm, incidents of harassment [and] unfulfilled threats of injury . . . are not persecution," nor is "low-level intimidation and harassment." Tegegn, 702 F.3d at 1144 (quotation omitted). Moreover, Cinto-Velasquez's encounters with guerillas years ago do not support a finding of past persecution based on his political beliefs. As the Supreme Court noted in Elias-Zacarias, "[e]ven a person who supports a guerrilla movement might resist recruitment for a variety of reasons -- fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." 502 U.S. at 482.

Likewise, the 2006 extortion letter, while distressing, was at most low-level intimidation by private actors who did not follow up on their demand, and who were not shown to be persons "that the government was unable or unwilling to control." Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005) (quotation omitted). As the BIA noted, the country conditions evidence reflected that, although Guatemala has a high level of gang violence, the government is aggressively combating that violence.

-4-

Lacking a showing of past persecution, Cinto-Velasquez failed to show "why these rather dated events provide an objectively reasonable basis for a present fear of particularized persecution directed at [him] personally on the basis of [his] political opinion." Hamzehi v. INS, 64 F.3d 1240, 1243 (8th Cir. 1995) (quotation omitted). As in Melecio-Saquil, "the record amply supports the [BIA]'s finding that the dramatic changes in Guatemala after the 1996 peace accords prevent these dated events from translating into an objectively reasonable fear of persecution at this time." 337 F.3d at 987; compare Menjivar v. INS, 259 F.3d 940, 942 (8th Cir. 2001) (changed conditions in El Salvador made likelihood of future persecution remote). And as in Menjivar, Cinto-Velasquez's family members remained in his home country and have been virtually "unmolested." 259 F.3d at 942.

2. Cinto-Velasquez further argues that the BIA erred in finding that he is not a member of a cognizable social group and therefore eligible for asylum. We review this issue of law *de novo*, but we give Chevron deference to the BIA's reasonable interpretation of this ambiguous statutory phrase. See Ngengwe v. Mukasey, 543 F.3d 1029, 1033 (8th Cir. 2008), citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984). The BIA has reasonably concluded that, to be protected, a particular social group must have a "common, immutable characteristic." Id. We agree with the BIA that the particular social group claimed by Cinto-Velasquez -- "Guatemalan repatriates who have lived and worked in the United States for many years and are perceived to be wealthy" -- is too amorphous because it turns on whether an individual is *perceived* as being wealthy.[2] Cinto-Velasquez admitted he did not know of other Guatemalan repatriates who received extortion demands from private gangs. And, like the respondents in Davila-Mejia v. Mukasey, he presented no evidence "that wealthy Guatemalans were recognized as

---

[2]Cinto-Velasquez argues on appeal that his alleged social group is not amorphous because gangs target him for his wealth *and* his cooperation with the government in 1992. That social group theory was not raised before the agency and is therefore unexhausted. See Sultani v. Gonzales, 455 F.3d 878, 884 (8th Cir. 2006).

a group that is at a greater risk of crime in general or of extortion or robbery in particular." 531 F.3d 624, 628 (8th Cir. 2008).

3. Substantial evidence also supports the BIA's finding that Cinto-Velasquez failed to prove he and his family would be unable to relocate within Guatemala. "The changes in the country's conditions following the 1996 peace accords greatly increase the likelihood that he can again find a safe place to live upon his return." Melecio-Saquil, 337 F.3d at 988. Moreover, Cinto-Velasquez's family safely remained in his home town after he left in 1993 and again in 2007.

4. Cinto-Velasquez argues the BIA erred in not concluding the IJ abused his discretion in denying voluntary departure. We lack jurisdiction to review the denial of voluntary departure. Fofanah v. Gonzales, 447 F.3d 1037, 1040-41 (8th Cir. 2006), citing 8 U.S.C. § 1229c(f).

5. The last document in Cinto-Velasquez's appellate Appendix, filed April 14, 2015, is a re-translation of the 2006 extortion letter from Mara 18 gang members, attested by the new translator on April 13, 2015. Cinto-Velasquez argues that this corrected translation provides strong evidence linking the extortion demand to his prior political support of the government and urges us to remand to the BIA "with instructions for the IJ to engage in further fact finding" on this issue. However, we may not grant relief on this basis because our review is limited to the administrative record before the agency. See Grass v. Gonzales, 418 F.3d 876, 879 (8th Cir. 2005).

We deny Cinto-Velasquez's petition for review.

_____