# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-1563

———————————————

Julio Humberto Lopez-Bravo

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: December 12, 2016
Filed: December 22, 2016
[Unpublished]

——————————

Before RILEY, Chief Judge, WOLLMAN and SMITH, Circuit Judges.

——————————

PER CURIAM.

An immigration judge (IJ) denied Julio Humberto Lopez-Bravo's application for asylum and withholding of removal. The Board of Immigration Appeals (BIA) dismissed Lopez-Bravo's appeal from the IJ's order. We deny Lopez-Bravo's petition for review.

Lopez-Bravo is a native and citizen of Guatemala. He entered the United States without inspection in January 2003, when he was sixteen years old. In August 2009, the Department of Homeland Security commenced removal proceedings against Lopez-Bravo, charging him with being an alien present in the United States without having been admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). Lopez-Bravo admitted the charge and conceded removability. He applied for asylum under 8 U.S.C. § 1158 and withholding of removal under 8 U.S.C. § 1231(b)(3)(A), claiming, as relevant here, that he would be persecuted on the basis of his membership in a particular social group if he were removed to Guatemala.

Lopez-Bravo testified during a hearing before the IJ that he joined the MS-13 gang in December 2002 and remained a member for one month. During that time, he was involved in a fight between the MS-13 gang and a rival gang and was struck once in the head by a rival gang member. Thereafter, Lopez-Bravo attended a meeting of the MS-13 gang, where they "talked about . . . how to attack people, how to rob them[,] and how to kill them right away." Lopez-Bravo decided to part ways with the MS-13, and when he told the other members after that meeting that he was leaving the gang, they threatened to kill him. Lopez-Bravo testified, "They said no one could leave their group, and if someone left it, he would have to be murdered; whoever is part of this group has to stay forever." MS-13 gang members followed Lopez-Bravo after the meeting, and he feared that they would kill him. He hid at a friend's house before traveling to the United States. That friend was later killed by members of the rival gang. Lopez-Bravo testified that he told Guatemalan police that the MS-13 "murdered anyone who left their group, and that I wanted [the police] to help me, but . . . they never did."

Lopez-Bravo testified that he interacted with thirteen of the gang members during his month-long association with the MS-13 gang and that he was last threatened in January 2003. Lopez-Bravo testified that, if he were removed to Guatemala, the MS-13 gang would harm him because he had left the gang.

Notwithstanding his ten-year absence from Guatemala and his lack of any gang-identifying tattoos, he testified that he still fears the MS-13 gang because "they never forget." Nevertheless, Lopez-Bravo's Guatemalan-resident five brothers and three sisters have not been harmed by any gang members since Lopez-Bravo fled.

In affirming the IJ's denial of relief and in dismissing Lopez-Bravo's appeal, the BIA essentially adopted the IJ's opinion and added some of its own reasoning, and so we will review these decisions together. See Malonga v. Holder, 621 F.3d 757, 764 (8th Cir. 2010). We consider the "administrative findings of fact under the deferential substantial-evidence standard," and "[w]e will not overturn an agency's decision unless the petitioner demonstrates that the evidence not only supports a contrary conclusion, but *compels* it." Id. (quotation omitted).

Lopez-Bravo's petition for review challenges only the denial of his application for withholding of removal. "Withholding of removal is proper if the Attorney General decides that the applicant's life or freedom would be threatened in his home country because of his race, religion, nationality, membership in a particular social group, or political opinion." Khrystotodorov v. Mukasey, 551 F.3d 775, 781 (8th Cir. 2008) (citing 8 U.S.C. § 1231(b)(3)(A)). This standard of proof is more demanding than the standard of proof for asylum "because it requires a showing of 'a clear probability' that the applicant will face persecution, rather than a well-founded fear." Id. An applicant can meet the "more onerous" standard in two ways. Malonga, 621 F.3d at 764. A showing of past persecution based on a protected ground entitles the applicant to a rebuttable presumption that he would be persecuted if removed. 8 C.F.R. § 1208.16(b)(1)(i). If the applicant cannot show past persecution, he must otherwise establish that it is more likely than not that he would be persecuted upon removal to his home country. Id. § 1208.16(b)(2). We have held that persecution "is an 'extreme concept' that involves the infliction or threat of death, torture, or injury to one's person or freedom, on account of a protected characteristic." Malonga, 621 F.3d at 764 (quoting Sholla v. Gonzales, 492 F.3d 946, 951 (8th Cir. 2007)). Even

assuming that Lopez-Bravo is a member of a particular social group—one composed of former members of the MS-13 gang—we conclude that substantial evidence supports the agency's decision to deny withholding of removal.

Lopez-Bravo argues that the death threats he received in December 2002 and January 2003 constitute past persecution. Although "a specific, credible, and immediate threat of death on account of [a protected characteristic]" can establish past persecution, see Corado v. Ashcroft, 384 F.3d 945, 947 (8th Cir. 2004) (per curiam), Lopez-Bravo has not shown that the record compels such a determination in this case. Lopez-Bravo testified that MS-13 gang members threatened and followed him immediately after he announced his decision to leave the gang. He provided no further details about the threat—he did not identify the person or persons who threatened him, nor did he identify the individuals who followed him. Lopez-Bravo did not provide any context for the January 2003 threat—where it happened, who made it, or any other specific information. While he submitted evidence regarding the violent nature of the MS-13 gang, the record does not establish whether the threats Lopez-Bravo received were credible. For example, there is no evidence regarding whether the specific individuals who threatened him were known for violence or whether the thirteen MS-13 gang members known to Lopez-Bravo had ever followed through on this type of threat. Moreover, Lopez-Bravo suffered no physical harm after he announced his decision to leave the gang, despite the fact that he was followed, and he traveled to a friend's house without incident. See Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006) ("Past persecution does not normally include unfulfilled threats of physical injury . . . ."). In light of this evidentiary record, we conclude that substantial evidence supports the agency's determination that Lopez-Bravo failed to establish past persecution. See Tegegn v. Holder, 702 F.3d 1142, 1144 (8th Cir. 2013) (explaining that death threats "that are exaggerated, non-specific, lacking in immediacy, or not based on a protected ground" do not constitute past persecution).

Similarly, the record does not compel the conclusion that Lopez-Bravo will more likely than not suffer persecution upon removal to Guatemala. Lopez-Bravo's one-month association with thirteen members of the MS-13 gang occurred more than a decade ago. He has not been threatened since January 2003, and his eight siblings have continued to live in Guatemala without gang interference. See Yuk v. Ashcroft, 355 F.3d 1222, 1235 (10th Cir. 2004) (concluding that unfulfilled threats are properly considered in determining whether an alien has a reasonable fear of future persecution, but passage of time since the threat was received diminishes its present significance); Manivong v. Dist. Dir., U.S. Dep't of Justice INS, 164 F.3d 432, 433 (8th Cir. 1999) (concluding that the fact that relatives still reside in country, without incident, undermines reasonableness of alien's fear of persecution). Thus, substantial evidence supports the BIA's conclusion that Lopez-Bravo "did not meet his burden of establishing a clear probability of future persecution on account of his membership in a particular social group."

The petition for review is denied.

_____