# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2248
_____

Yeemy Guatemala-Pineda

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States[1]

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: February 17, 2021
Filed: March 26, 2021
_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After Yeemy Guatemala-Pineda entered the United States unlawfully, she applied for asylum so she wouldn't have to return to her home country of El Salvador.

_____

[1]Merrick B. Garland is serving as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

She feared that if she returned there gangs would persecute her because of her religious activities. After a winding course of immigration proceedings that began more than ten years ago, the Board of Immigration Appeals ultimately denied her request for asylum. We deny the petition for review since we think substantial evidence supports the BIA's decision.

Guatemala-Pineda, whom we will call Pineda as her real name is Yeemy Michael Pineda, attempted to enter the United States in 2010 at age 22 but was apprehended by immigration authorities and charged with being inadmissible as an alien without proper documentation. *See* U.S.C. § 1182(a)(7)(A)(i)(I). She conceded that the charge was true but applied for asylum, which protects, among others, refugees present in the United States who are unable or unwilling to return to their home country because they have a well-founded fear that others will persecute them on account of their religion. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). Pineda testified before an immigration judge that she was a practicing Christian who had participated in a church project of door-to-door evangelization that specifically targeted gang members. She related that a handful of gang members had at one time "cornered" and "grabbed" her during a church function and tried to recruit her to their gang, explicitly telling her that they did not want to see her working with the church. Though they also threatened to "take [her] by force" and find her wherever she went, they did not otherwise physically harm her.

After that incident Pineda stopped attending church, opting instead to participate in religious services at other people's homes. During one of these home services, Pineda testified, gang members appeared outside and demanded that the group stop singing. She believed they were the same gang members who had threatened her before; they specifically called her by name and said they were "coming for" her. Two weeks later, at another home gathering, gang members again appeared outside, announced they were armed, and demanded that she come outside

or "they were going to get" her. The people inside threw themselves on the ground and waited about two hours until the gang members departed.

At that point, Pineda testified, she obtained a job selling clothes in San Salvador, which was about ninety minutes from her home. She explained that gang members did not bother or threaten her while at work, though one time she had to crouch down when she heard gunshots directed toward another person.

The immigration judge concluded that, even though Pineda had not demonstrated past persecution, she did have a well-founded fear of future persecution, and so granted her application for asylum. When the government appealed to the BIA, the BIA remanded the case to the immigration judge to consider, among other things, whether Pineda could reasonably relocate within El Salvador to avoid future persecution. On remand, Pineda testified that, if forced to return to El Salvador, she would return to her mother's house because she had no other place to go. She noted that her entire family lives in the same city and that she could not relocate to another city as a single Christian woman. She also elaborated on her time working in San Salvador, explaining that she commuted alone and worked three to five days a week for a few months before leaving for the United States. Pineda also testified that, though she did not experience difficulties from gang members in San Salvador or while commuting, thieves did steal her paycheck three or four times and her cell phone twice, often while she was riding on a bus.

Pineda also presented testimony from an expert on Central American gangs. He testified that El Salvador is "the most violent country in the world for women" and that four things put Pineda "at not only high but very predictable risk" of harm should she return to El Salvador: her religious practices and activities, her past refusal to comply with gang demands, her flight from El Salvador to escape gang threats, and the ability of gangs to learn of her return. Further, he opined, Pineda would be at high risk anywhere in El Salvador because she is a young, single woman with no

protective family network, making "internal relocation a very, very difficult proposition."

The immigration judge again granted Pineda's request for asylum, concluding that she had carried her burden to show that internal relocation was unreasonable, as "[s]he is a young single woman returning to a country the size of Massachusetts where abuse and violence against women is one of the principal human rights problems." The judge acknowledged that Pineda had worked in San Salvador for three months without interference from gangs but pointed out that during that time she had been robbed of her paycheck or cell phone at least five times and "did not proselytize in the streets." In sum, there were simply no other parts of the country "that are any better than the area that gave rise to [Pineda's] original claim." On appeal, however, the BIA pointed out that Pineda was able to avoid gang persecution while working in San Salvador. It also noted that, even though Pineda was the victim of crimes during her commute, it was unclear whether she could have avoided these and similar crimes by moving to San Salvador instead of commuting from her hometown. The BIA therefore remanded for the immigration judge "to reconsider the overall reasonableness of any relocation by the respondent throughout El Salvador."

On remand, Pineda's case was assigned to a different immigration judge. The new judge concluded, after receiving additional arguments from the parties and what he termed "extensive country condition evidence," that Pineda had failed to shoulder her burden to show that she could not relocate elsewhere in El Salvador since she was able to avoid gang persecution while working in San Salvador. The BIA upheld that determination.

In her petition for review from that holding, Pineda challenges the determination that she failed to show she could not safely relocate to another part of El Salvador. We review both the BIA's decision and the immigration judge's decision to the extent the BIA adopted the findings or reasoning of the immigration judge. *See*

*Degbe v. Sessions*, 899 F.3d 651, 655 (8th Cir. 2018). We will uphold the decision so long as substantial evidence supports it. *See Cinto-Velasquez v. Lynch*, 817 F.3d 602, 607 (8th Cir. 2016). When applying that "extremely deferential" standard, we will not reverse "unless, after having reviewed the record as a whole, we determine that it would not be possible for a reasonable fact-finder to adopt the BIA's position." *See Eusebio v. Ashcroft*, 361 F.3d 1088, 1091 (8th Cir. 2004).

Since Pineda does not contend that she has shown past persecution, she must show she has a well-founded fear of future persecution to prevail. *See* 8 U.S.C. § 1101(a)(42)(A); *see also* 8 C.F.R. § 1208.13(b). But "[a]n applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(2)(ii). Because Pineda has not demonstrated past persecution, and the gangs she fears are not government or government sponsored, she bears the burden to show that relocation would not be reasonable. *See id.* § 1208.13(b)(3)(i). In these circumstances relocation is presumed to be reasonable. *See id.* § 1208.13(b)(3)(iii).

We hold that substantial evidence supports the BIA's determination that Pineda could relocate to another part of El Salvador if forced to return. We believe that a reasonable factfinder could give substantial weight to the lack of gang harassment Pineda suffered while working in San Salvador for a number of months. Even if gangs generally have significant reach throughout the country and are able to locate people like her quickly, as Pineda maintains, the fact that they did nothing to her for months as she worked in San Salvador is hard to overlook. And even though the first immigration judge to preside over Pineda's proceedings found that internal relocation would not be reasonable, that does not necessarily mean that substantial evidence did not support the second immigration judge's decision. It might just go to show that the reasonableness of relocation in this case is one on which reasonable people could disagree.

To bolster her case, Pineda emphasizes that she suffered other serious harm in San Salvador when she had paychecks and cell phones stolen from her. Pineda is right that, to prevail, she need not show that she suffered other serious harm on account of a protected ground, such as religion. *See Hagi-Salad v. Ashcroft*, 359 F.3d 1044, 1048 n.5 (8th Cir. 2004). But that other harm must rise to "the severity of persecution" for her to carry the day. *Id.* "Persecution is an extreme concept," involving things like death or the threat of death, torture, or injury to one's person or freedom. *See De Castro-Gutierrez v. Holder*, 713 F.3d 375, 380 (8th Cir. 2013). Pineda did not describe anything that occurred to her during her commutes to and from San Salvador or her employment there that approaches this high standard.

We therefore conclude that substantial evidence supports the BIA's determination, considering that Pineda worked for months in San Salvador without trouble from gangs. Though we recognize that Pineda's expert opined that she was at risk, we think the BIA did not unreasonably focus on there being no evidence that she was persecuted during the months she worked in San Salvador. We have upheld a decision on this kind of question based on less, as, for instance, where an asylum seeker had stayed in another part of a country without being harmed for five weeks. *See Molina-Cabrera v. Sessions*, 905 F.3d 1103, 1106 (8th Cir. 2018).

Though we sympathize with Pineda's subjective fear of returning alone to a different part of El Salvador, we cannot say that the BIA's relocation determination is unsupported by substantial evidence. Because we uphold this portion of the BIA's decision, we do not consider whether substantial evidence supported the BIA's conclusion that the government of El Salvador was unwilling or unable to control the gangs that Pineda feared.

Petition denied.

_____