# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1470

_____

Paul P. Cropper

*Plaintiff - Appellant*

v.

Leland Dudek, Acting Commissioner of Social Security [*]

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 24, 2024
Filed: May 8, 2025

_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

In February 2020, Paul Cropper applied for disability insurance benefits and supplemental security income, alleging he was unable to work because of numerous

_____

[*]Leland Dudek has been appointed to serve as Acting Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

impairments including anxiety, depression, attention deficit hyperactivity disorder, insomnia, and chronic obstructive pulmonary disease. The Social Security Administration denied Cropper's application initially and on reconsideration. He timely requested a hearing before an administrative law judge ("ALJ"). At the hearing, Cropper submitted opinions of two of his medical providers that his impairments severely limited him and were work preclusive.

Following the hearing, the ALJ conducted the five-step analysis prescribed in 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) and denied Cropper's application for disability benefits. The ALJ found that Cropper has severe impairments but no listed impairments,[1] he is unable to perform any of his past relevant work, he has the residual functional capacity to perform less than the full range of light work with certain restrictions, and there are "jobs that exist in significant numbers in the national economy that [he] can perform." The ALJ found the statements of Cropper's primary care provider, Physician Assistant Kiana Deal ("PA Deal"), and his treating psychiatrist, Dr. Lee Lutes, "to be unpersuasive." The agency's Appeals Council denied Cropper's request for review, making the ALJ's decision final for purposes of judicial review. See 42 U.S.C. §§ 405(g), 1383(c).

Cropper timely commenced this action in the district court, seeking judicial review of the ALJ's unfavorable decision. His Complaint alleged: "1. The Administrative Law Judge improperly evaluated the evidence of record; 2. Doing so resulted in an improper residual functional capacity determination; 3. As a result of the improper residual functional capacity determination, the Administrative Law Judge's finding that Plaintiff could perform work existing in significant numbers is not supported by substantial evidence on the record as a whole." On March 31, 2023, Cropper moved for summary judgment, arguing the ALJ violated the agency's

---

[1]COPD, depression, anxiety, personality disorder, and neurodevelopmental disorder.

governing regulations by failing to adequately evaluate the medical opinions of PA Deal and Dr. Lutes. The Commissioner filed a cross-motion for summary judgment, arguing that substantial evidence supports the ALJ's decision that the opinions of Dr. Lutes and PA Deal were unpersuasive.

In a lengthy opinion ruling on the cross-motions, the district court[2] stated, "Plaintiff's sole argument is that the ALJ erred in analyzing the opinions of his treating medical and mental-health providers." The court dismissed Cropper's request for review, concluding that "substantial evidence in the record as a whole supports the ALJ's decision that the opinions of Dr. Lutes and [PA Deal] were not persuasive." Cropper appeals, arguing the ALJ, in determining the persuasiveness of these medical opinions, erred by failing to abide by and comply with 20 C.F.R. § 404.1520c, the agency's regulation defining "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

After thorough *de novo* review, we agree with the district court that the ALJ considered whether the medical opinions at issue are supported by objective medical evidence and consistent with the record evidence from other medical and nonmedical sources, and that the ALJ adequately explained his decision. See § 404.1520c(c)(1)-(2) and (d). Accordingly, we affirm.

**I.**

The Social Security Act directs the Commissioner, in ruling on disability benefits applications, "to make findings of fact" and discuss "the evidence . . . and the reason or reasons upon which [an unfavorable decision] is based." 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A). The Act provides no statutory guidance how the agency

---

[2]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

should evaluate medical evidence. In 1991, responding to decisions of reviewing courts, the Commissioner adopted a "treating source rule," which provided that the opinion of a treating physician is accorded special deference under the regulations and will be granted "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); see Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Under this rule:

> [A]n ALJ must give a treating physician's opinion *controlling weight* if it is well-supported by medical evidence and not inconsistent with the substantial evidence in the record. If the ALJ decides that the opinion does not deserve controlling weight, the ALJ must provide "good reasons" for this decision and must consider: the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, record support for the opinion, the opinion's consistency, the extent to which the opinion is connected with the physician's specialization, and other relevant factors. SSA guidance provided that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers . . . the reasons for the decision." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Lucas v. Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) (emphasis added) (cleaned up).

In 2017, after prolonged notice and comment rulemaking proceedings, the agency adopted Revisions to Rules Regarding the Evaluation of Medical Evidence. The revisions replace the treating source rule, for claims filed on or after March 27, 2017, with new sections 404.1520c and 416.920c that govern "How We Consider and Articulate Medical Opinions and Prior Administrative Medical Findings." 82 FR 5844-01, 2017 WL 168819; see generally Woods v. Kijakazi, 32 F.4th 785, 790-91 (9th Cir. 2022). The relevant time period for Cropper's Claim began on December 27, 2019, the date his last prior application was denied. See Pirtle v. Astrue, 479 F.3d

931, 934 (8th Cir. 2007). Thus, his Claim and this appeal are governed entirely by the revised regulations.[3]

The revised regulations rescinded SSR 96-2p, which required ALJs to give a treating physician's opinion controlling weight if it is well-supported by medical evidence and not inconsistent with the substantial evidence in the record, and to assign lesser weight to other treating source medical opinions, giving specific reasons for the weights given. This was the basis for our longstanding interpretation of the treating source rule, as we explained in Lucas, 960 F.3d at 1068. Now, for claims filed on or after March 27, 2017, the revised regulations instead provide:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . . [W]e will consider those medical opinions . . . using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). . . . [W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision.

§ 404.1520c(a), (b)(2).

---

[3]The evaluation of medical opinions for claims filed before March 27, 2017, is governed by § 404.1527, which retains the treating source rule. See Kraus v. Saul, 988 F.3d 1019, 1024-26 (8th Cir. 2021); Walker v. Comm'r, Soc. Sec. Admin., 911 F.3d 550, 553 (8th Cir. 2018).

## II.

The ALJ denied Cropper's Claim for benefits based on findings that he had the residual functional capacity to adjust to and perform less than the full range of light work jobs that exist in significant numbers in the national economy. In conducting *de novo* judicial review of the district court's decision affirming a denial of benefits, we will affirm "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." Kraus, 988 F.3d at 1024 (quotation omitted). "[A]n ALJ's factual findings -- such as the determination that [Cropper could have found light work] -- 'shall be conclusive' if supported by 'substantial evidence.'" Biestek v. Berryhill, 587 U.S. 97, 102 (2019), quoting § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Id. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." Kraus, 988 F.3d at 1024 (quotation omitted). We will only disturb the ALJ's decision if it falls "outside the available zone of choice." Austin v. Kijakazi, 52 F.4th 723, 728 (8th Cir. 2022) (quotation omitted).

The revised regulations direct ALJs to consider five factors when evaluating the persuasiveness of a provider's medical opinion: (1) whether it is supported by objective medical evidence and the provider's own explanations, (2) whether it is consistent with other evidence in the record, (3) the relationship the provider has with the claimant, (4) the provider's specialization, and (5) any other relevant factors. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors. § 404.1520c(a); see Austin, 52 F.4th at 728. An ALJ does not "defer or give any specific evidentiary weight" to a treating physician's medical opinion. § 404.1520c(a); Austin, 52 F.4th at 730.

Dr. Lutes submitted a medical source statement in which she opined on a check-box form that Cropper was markedly or extremely limited in seventeen of twenty-one areas of functioning due to his impairments; needed more than three days off from work per month; and required unscheduled work breaks. PA Deal submitted a similar form and a narrative explanation to support her opinion that Cropper's medical and mental-health conditions "significantly limits his ability to perform duties outside the home." The ALJ found these opinions unpersuasive -- neither was consistent with the provider's treatment notes documenting Cropper's "conservative course of treatment"; neither was supported by the provider's examination findings and observations of Cropper during his appointments; and PA Deal's opinions regarding Cropper's mental-health limitations were unpersuasive because she was not a mental-health professional.

While conceding the ALJ addressed the supportability and consistency factors, Cropper argued to the district court that "the ALJ's findings about these opinions . . . are flawed because the ALJ did not sufficiently analyze the supportability and consistency of the opinions." After careful review of the administrative record, the district court found that "[s]ubstantial evidence in the record as a whole supports the ALJ's decision that the opinions of Dr. Lutes and Ms. Deal were not persuasive," and granted the Commissioner's motion for summary judgment.

On appeal, Cropper ignores the district court's analysis and attacks the ALJ's persuasiveness finding from a different perspective: the problem is not that the ALJ failed to consider the supportability and consistency factors and articulate in his decision how persuasive he found the medical opinions in the case record, as § 404.1520c(b) and (c)(1)-(2) require; rather, he contends, the ALJ's adverse findings regarding the supportability and consistency factors were not supported by substantial evidence in the administrative record. We agree with the Commissioner that this argument is fundamentally inconsistent with our statutorily mandated substantial evidence standard of review -- it invites us to reweigh the evidence of record regarding

the supportability and consistency factors, rather than uphold the ALJ's finding that the medical opinions are not persuasive unless that finding "falls outside the available zone of choice." Ross v. O'Malley, 92 F.4th 775, 778 (8th Cir. 2024) (quotation omitted).

The treating source rule, unlike the revised regulations, required an ALJ to determine whether a medical opinion was entitled to "controlling weight," a dispositive finding to which the substantial evidence rule in 42 U.S.C. § 405(g) applies. See Lucas, 960 F.3d at 1068-69. Under the revised regulations, a treating source's opinion is entitled to no deference, but the ALJ's determination of persuasiveness is still a significant component of the ALJ's residual functional capacity finding, which is dispositive if unfavorable and therefore subject to the substantial evidence standard of review. In this case, the district court granted summary judgment because substantial evidence in the record as a whole supports the ALJ's decision that the opinions of Dr. Lutes and PA Deal *were not persuasive*. That analysis is consistent with our approach to this issue. See Austin, 52 F.4th at 729 ("the ALJ adequately evaluated the persuasiveness of Dr. Addison-Brown's opinion and had sufficient grounds to conclude that the opinion was unpersuasive.").

On appeal, the parties assume that the ALJ's analysis of the supportability and consistency persuasiveness factors is subject to separate substantial evidence review. But analysis of supportability and consistency, while important ingredients in determining a medical opinion's persuasiveness, are not conclusive, as persuasiveness turns on the multiple factors identified in § 404.1520c(c), and persuasiveness may then be critical, as in this case, to an unfavorable residual functional capacity finding that is subject to substantial evidence review on the total administrative record. If these ingredients must satisfy a preliminary, ill-defined substantial evidence standard, then judicial review becomes more rather than less complex, contrary to the stated purposes of the revised regulations. Thus, we limit our review under the revised regulations to whether the ALJ adequately analyzed persuasiveness, including the supportability and

consistency factors, not whether we agree with the ALJ's evaluation of the record evidence on those issues. See Austin, 52 F.4th at 728-30; Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022). This of course includes review of whether the ALJ's reasoning is "clear enough to allow for appropriate judicial review." See Grindley v. Kijakazi, 9 F.4th 622, 631 (8th Cir. 2021) (quotation omitted).

## III.

The ALJ determined that Dr. Lutes' medical opinion was inconsistent with Cropper's "conservative course of treatment documented in the record consisting of outpatient medication management and no significant outpatient therapy." Cropper argues substantial evidence does not support this finding. Cropper failed to make this argument to the district court; he only took issue with the ALJ's discussion of supportability. Because first raised on appeal, this argument is waived. See, e.g., Brossart v. Janke, 859 F.3d 616, 624 n. 4 (8th Cir. 2017), cert. denied, 584 U.S. 992 (2018). Even if not waived, the argument is without merit.

Cropper argues the ALJ was factually incorrect in asserting that the opinion of Dr. Lutes that Cropper has extreme physical and mental work-related limitations was inconsistent with the conservative course of treatment documented in the record despite his treatment non-compliance due to ongoing cigarette smoking. The ALJ found that Cropper "is no more limited than established by the above residual functional capacity assessment as supported by the longitudinal record taken as a whole." Cropper simply disagrees with this finding. Even when the treating physician rule applies, "[a]n ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact." Kraus, 988 F.3d at 1024 (quotations omitted). We will not disturb an ALJ's decision merely because there is evidence supporting "two inconsistent conclusions." Ross, 92 F.4th at 778 (quotation omitted). The ALJ's determination fell within the "zone of

choice," and is thus supported by substantial evidence on the record as a whole. Austin, 52 F.4th at 731 (quotation omitted).

Cropper also contends that the ALJ committed legal error by offering "no explanation as to how Dr. Lutes' opinions were not supported." We disagree. The ALJ discussed Dr. Lutes' treatment notes in detail, explaining that those notes included "relatively intact mental status examination observations," reported Cropper consistently doing "alright," and highlighted Cropper's personal activities such as fishing, seeing friends, playing cards, and taking trips. An ALJ may properly consider a provider's own examination notes when determining whether that provider's opinion is supported. See Bowers, 40 F.4th at 875; Starman v. Kijakazi, 2021 WL 4459729 at *4 (E.D. Mo. Sept. 29, 2021) (citing cases).

Cropper also argues the ALJ's supportability explanation and finding were not supported by substantial evidence. This assumes that evaluating supportability is a separate issue that must be supported by substantial evidence. As explained, we conclude that this evaluation is simply part of determining whether the ALJ's ultimate persuasiveness and residual functional capacity findings are supported by substantial evidence -- issues Cropper does not even raise on appeal. In any event, we disagree with the argument. Cropper takes issue with the ALJ's "cursory" explanation and citation to general portions of the provider treatment notes. But "[t]he ALJ's brevity is not reversible error." Grindley, 9 F.4th at 631. And Cropper ignores the ALJ's thorough review of Dr. Lutes' examination notes earlier in the ALJ's opinion. We conclude the ALJ's evaluation of supportability and articulation of his consideration of all of the medical opinions in the administrative record complies with § 404.1520c. See Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021) (unpublished).

The Statement of Issues section of Cropper's appeal Brief states that the ALJ did not properly evaluate the supportability and consistency of the medical opinion of both Dr. Lutes and PA Deal. However, the Argument section of the Brief does not

-10-

separately argue this issue regarding the medical opinion of PA Deal, as Federal Rule of Appellate Procedure 28(a)(8) requires.  Accordingly, Cropper has waived this issue. See, e.g., Cinto-Velasquez v. Lynch, 817 F.3d 602, 604 n.1 (8th Cir. 2016).

For the foregoing reasons, the judgment of the district court is affirmed.

_____